1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   NICOLE ALBRECHT WHEELER, PETRA          Case No. CV 16-6655 DOC (SS)
     ALBRECHT, RICHARD WHEELER,
12                                           **MEMORANDUM AND ORDER**
                     PlaintiffS,
13                                           **DISMISSING COMPLAINT WITH**
          v.
14                                           **LEAVE TO AMEND**
     UNKNOWN NAMED AGENTS OF ICE, et
15   al.,

16                   Defendants.

17

18                                  **I.**

19                            **INTRODUCTION**

20

21        On September 2, 2016, Plaintiffs Nicole Albrecht Wheeler

22   ("Wheeler"), Petra Albrecht ("Albrecht"), and Richard Wheeler

23   (collectively "Plaintiffs") filed a civil rights complaint (the

24   "Complaint") pursuant to the Federal Tort Claims Act ("FTCA"), 28

25   U.S.C. §§ 1346, 2671 and <u>Bivens v. Six Unknown Named Agents</u>, 403

26   U.S. 388 (1971) against various defendants.  (Complaint at 1-3,

27

28

1   22-28).  For the reasons stated below, the Complaint is dismissed

2   with leave to amend.[1]

3                                 II.

4                    ALLEGATIONS OF THE COMPLAINT

5

6

7        Plaintiffs named the following seventeen employees of United

8   States Immigration and Customs Enforcement ("ICE"), an agency under

9   the Department of Homeland Security ("DHS"), as defendants in their

10  individual capacities:  (1) Field Office Director David Jennings

11  ("Jennings"); (2) Assistant Field Office Director Arturo Trevino

12  ("Trevino");  (3)  Supervisor  Andre  Quinones  ("Quinones");

13  (4)Deportation Officer Nelly McKenna ("McKenna"); (5) Chief Counsel

14  Sandra  Anderson  ("Anderson");  (6)  Director  Christina  Holland

15  ("Holland");  (7)  Supervisor  Jaime  Manriquez  (Manriquez");  (8)

16  Deputy Patricia Holliday ("Holliday"); (9)  Otay Facility Unit

17  Manager Billie Handsbur ("Handsbur"); and (10) 8 Unknown Federal

18  ICE Agents ("ICE Agents") (collectively, "Defendants").  (Compl.

19  at 1-3).

20

21       Plaintiffs allege Fourth Amendment claims for a warrantless

22  search and excessive use of force; a Fifth Amendment due process

23  claim for denial of access to counsel; Eighth Amendment claims for

24  denial  of  medical  treatment  and  substandard  conditions  of

25  confinement; a First Amendment retaliation claim; and a loss of

26  consortium claim.  (Compl. at 22-28).

27  _____

    [1]  Magistrate judges may dismiss a complaint with leave to amend
28  without approval of the district judge.  See McKeever v. Block,
    932 F.2d 795, 795 (9th Cir. 1991).

                                  2

1    Plaintiffs allege that on September 8, 2014, at 7:30 a.m.,
2  ICE Agents, in coordination with the Los Angeles Police Department
3  ("LAPD") and the Department of Child Protective Services ("DCPS"),
4  conducted a warrantless sweep of Plaintiffs' home. (Compl. at 5).
5  An administrative warrant was issued eight hours after the sweep
6  at 3:31 p.m. (Compl. at 6-7).  Upon entering Plaintiffs' home, ICE
7  Agents allegedly used excessive force, drawing their guns and
8  pointing them at Plaintiffs.  Id.  After the raid, ICE Agents
9  arrested Plaintiffs Petra Albrecht ("Albrecht") and Nicole Albrecht
10 Wheeler ("Wheeler") and allegedly placed them in a van "for several
11 hours, without air, water," or access to a bathroom.  (Compl. at
12 6).  Plaintiffs Albrecht and Wheeler admit that they had
13 "overstayed their visas" when they were arrested.  (Compl. at 7).
14 Plaintiffs allege that they were incarcerated for six and a half
15 months.  Id.

16

17    Plaintiffs Albrecht and Wheeler allege that they were
18 malnourished and deprived of medical treatment during their
19 incarceration.  (Compl. at 13-16).  Plaintiffs' family and
20 attorneys allegedly made "written and verbal pleas . . . for proper
21 medical care," which were "ignored" by Defendants Handsbur and
22 Trevino.  (Compl. at 17).  Plaintiffs also allege that while the
23 Otay Detention Facility was operated by "CCA," a contracted private
24 entity, DHS had extensive "day-to-day" and "in-house" oversight of
25 the facility, including its medical treatment center.  Id.

26

27    Denial of medical treatment allegedly caused Plaintiff Wheeler
28 to suffer from "an early miscarriage, frequent chest pain,

3

1    significant weight loss, a shoulder injury, [and a] knee injury"
2    that were "never attended to." (Compl. at 15). Plaintiff Albrecht
3    was also allegedly denied medical care. For example, Plaintiff
4    Albrecht went to the emergency room three times for "serious heart
5    palpitations, severe back pain and other ailments only after family
6    members or attorney's [sic] hounded the facilities repeatedly."
7    (Compl. at 16). On September 10, 2015, at the Adelanto Detention
8    Facility ("Adelanto"), Plaintiff Albrecht allegedly became
9    unconscious, "suffering what she believed to be a heart attack."
10   Id. Medical staff at Adelanto allegedly checked Plaintiff
11   Albrecht's blood pressure but refused to send her to the emergency
12   room. Id. Plaintiff Albrecht suffered numerous physical injuries
13   because of medical neglect. (See Compl. 16-17).
14
15       Defendants McKenna and Holliday allegedly retaliated against
16   Plaintiffs Albrecht and Wheeler because Plaintiffs refused to sign
17   certain documents relating to their deportation. (Compl. at 17).
18   Defendants McKenna and Holiday allegedly transferred Plaintiff
19   Albrecht to a high-security detention facility in San Diego County,
20   and they placed Plaintiff Wheeler in a high-level security facility
21   in Los Angeles because both Plaintiffs refused to sign the
22   documents. (Compl. at 12).
23
24       Plaintiff Wheeler was also placed in solitary confinement
25   after filing complaints regarding the poor conditions at the Otay
26   Detention Facility. Id. Plaintiff Wheeler was housed in solitary
27   confinement for fourteen days prior to her asylum hearing and
28   twenty-four hours before her bond hearing, which allegedly

precluded her from preparing for the hearings with her attorney. (Compl. at 14).   Plaintiff Wheeler contends that she received unfavorable rulings in her asylum and bond hearings because Defendants denied her access to her attorney.   (Compl. 13-15). Plaintiff Wheeler was then forced to sign a "behavioral contract" before she could be released from solitary confinement.   (Compl. at 14).

On January 12, 2016, Plaintiffs Albrecht and Wheeler were allegedly subject to excessive force and sexual harassment by Defendants Patterson, "Roger,"[2] and five ICE Agents. Defendants allegedly hurt Plaintiff Wheeler's fingers while throwing her on a bench, "touching her breast, hurting her knee, throwing her against a wall," and pulling out a "wad" of Plaintiff Wheeler's hair. (Compl. at 19).   Defendants then allegedly refused Plaintiff Wheeler's requests for medical attention.   Id.

Plaintiffs seek compensatory, punitive, and monetary damages. (Compl. at 28).   Plaintiffs also seek injunctive relief to "administratively close [Plaintiffs'] immigration cases" and grant "adjustment of status to [P]laintiffs Nicole Albrecht Wheeler, Petra Albrecht, and minor child, J.A."   (Compl. at 29).

---

[2]   "Roger" was not identified in the "Parties" section of the Complaint.

1

**II.**

2

**STANDARD FOR DISMISSAL OF PRO SE COMPLAINT**

3

4       Under Federal Rule of Civil Procedure 12(b)(6), a trial court

5   may dismiss a claim <u>sua sponte</u> "where the claimant cannot possibly

6   win relief." <u>Omar v. Sea-Land Serv., Inc.</u>, 813 F.2d 986, 991 (9th

7   Cir. 1987); <u>see also</u> <u>Baker v. Director, U.S. Parole Comm'n</u>, 916

8   F.2d 725, 726 (D.C. Cir. 1990) (per curiam) (adopting the Ninth

9   Circuit's position in <u>Omar</u> and noting that such a <u>sua sponte</u>

10   dismissal "is practical and fully consistent with plaintiff's

11   rights and the efficient use of judicial resources").  When a

12   plaintiff appears <u>pro se</u> in a civil rights case, the court must

13   construe the pleadings liberally and afford the plaintiff the

14   benefit of any doubt.  <u>Karim-Panahi v. Los Angeles Police Dep't.</u>,

15   839 F.2d 621, 623 (9th Cir. 1988).  In giving liberal interpretation

16   to a <u>pro se</u> complaint, the court may not, however, supply essential

17   elements of a claim that were not initially pled.  <u>Ivey v. Bd. of</u>

18   <u>Regents of Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).  A

19   court must give a <u>pro se</u> litigant leave to amend the complaint

20   unless it is "absolutely clear that the deficiencies of the

21   complaint could not be cured by amendment." <u>Karim-Panahi</u>, 839 F.2d

22   at 623 (citation and internal quotation omitted).

23

24       The Court finds that the instant Complaint fails to state

25   cognizable claims for relief and must be dismissed.  However, leave

26   to amend is granted.

27

28

1           **III.**

2        **DISCUSSION**

3

4  **A.     This Court Lacks Jurisdiction Over Plaintiffs' Denial Of**

5           **Access To Counsel Claim Under 8 U.S.C. 1252(b)(9)**

6

7           Section 1252(b) sets forth requirements for judicial review

8  of an order of removal.  Section 1252(b)(9) states that:

9

10          Judicial  review  of  all  questions  of  law  and  fact,

11          including    interpretation    and    application    of

12          constitutional  and  statutory  provisions,  arising  from

13          any action taken or proceeding brought to remove an alien

14          from  the  United  States  under  this  subchapter  shall  be

15          available  only  in  judicial  review  of  a  final  order  under

16          this  section.  Except  as  otherwise  provided  in  this

17          section, no court shall have jurisdiction . . . to review

18          such an order or such questions of law and fact.

19

20  8   U.S.C. 1252(b)(9).   The Supreme Court has described section

21  1252(b)(9) as a "'zipper clause.'  Its purpose is to consolidate

22  'judicial review' of immigration proceedings into one action in

23  the court of appeals."  INS v. St. Cyr, 533 U.S. 289, 313 (2001)

24  (quoting Reno v. American-Arab Anti-Discrimination Committee, 525

25  U.S. 471, 483 (1999)).  Section 1252(b)(9) therefore operates to

26  bar  claims  common  to  removal  proceedings  where  they  directly

27  "aris[e] from an action taken or proceeding brought to remove an

28  alien from the United States."  J.E. F.M. v. Lynch, No. 15-35738,

                              7

1   2016 WL 5030344, at *5 (9th Cir. Sept. 20, 2016) ("[R]ight-to-
2   counsel claims must be raised through the PFR process because they
3   'arise from' removal proceedings. The counsel claims are not
4   independent or ancillary to the removal proceedings.") (quoting 8
5   U.S.C. § 1259(b)(9))).

6

7       Here, Plaintiff Wheeler's "right-to-counsel" was allegedly
8   violated when she was housed in solitary confinement, without
9   access to her attorney, fourteen days before her asylum hearing
10  and twenty-four hours prior to her bond hearing. (Compl. at 15 ).
11  Plaintiffs also seek injunctive relief to "close [Plaintiffs']
12  immigration cases and grant adjustment to [their immigration]
13  status." (Compl. at 29). These claims arise directly from
14  Plaintiffs' removal proceedings and are therefore barred from
15  district court review.

16

17      Plaintiffs "unquestionably have the right, under the INA, to
18  raise these claims before the immigration judge, before the Board
19  of Immigration Appeals (BIA), and ultimately before the court of
20  appeals," Aguilar v. U.S. Immigration & Customs Enf't Div. of Dep't
21  of Homeland Sec., 510 F.3d 1, 14 (1st Cir. 2007), but Plaintiffs
22  cannot raise these claims in the current proceeding. Accordingly,
23  this Court lacks subject matter jurisdiction to consider
24  Plaintiffs' Fifth Amendment due process claim for denial of access
25  to counsel.

26

27

28

**B.    Plaintiffs Fail To Allege Personal Participation By Defendants In The Alleged Civil Rights Violations**

To demonstrate a civil rights violation against immigration officials, a plaintiff must show either direct, personal participation or some sufficient causal connection between the officials' conduct and the alleged constitutional violation. See Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (as applied to a section 1983 claim); Kwai Fun Wong v. United States, 373 F.3d 952, 966-67 (9th Cir. 2004).

Plaintiff's allegations regarding the civil rights violations are conclusory and vague. Plaintiff must include specific facts showing the personal participation of individual defendants in the alleged violations. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (holding that a complaint must include specific facts for a plausible claim). Similarly, it is not enough to allege that ICE "[A]gents denied medical attention" or that the "facility and ICE" refused to take Plaintiff Albrecht to the emergency room. (Compl. at 16). Plaintiffs must identify how individual defendants personally participated in the wrongful conduct. Accordingly, Plaintiff's claims against Defendants must be dismissed.

**C.    The Complaint Fails To Satisfy Federal Rule Of Civil Procedure 8**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim

9

showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). Violations of this rule warrant dismissal. Rule 8 may be violated when a pleading "says too little," Knapp v. Hogan, 738 F.3d 1106, 1108 (9th Cir. 2013)(citing Ashcroft, 556 U.S. at 678), and "when a pleading says too much." Knapp, 738 F.3d at 1108 (citing Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011)(a complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint)); see also McHenry v. Renne, 84 F.3d 1172, 1179–80 (9th Cir. 1996) ("Prolix, confusing complaints . . . impose unfair burdens on litigants and judges.").

Here, the Complaint violates Rule 8 because it contains repetitious, conclusory, and confusing allegations. Moreover, many of the facts do not relate to Plaintiffs' claims. Plaintiffs discuss in great detail the circumstances surrounding the deportation of J.A. However, these facts are completely irrelevant to the current action. (Compl. at 7-11). In addition, because Plaintiffs are not required to provide evidence supporting their claims at this stage of the litigation, the numerous exhibits attached to the Complaint are unnecessary.

The Complaint fails to provide Defendants with fair notice of the claims in a clear and concise statement. See Twombly, 550 U.S. at 555. Accordingly, the Complaint is dismissed with leave to

1   amend.  Should Plaintiffs choose to file an Amended Complaint, they
2   are advised to clearly identify the nature of the legal claims they
3   are bringing, the specific facts giving rise to each claim against
4   each individual Defendant, and the relief sought.

5

6   D.   **The Heck Doctrine May Bar Some Or All Of Plaintiffs' Claims**

7

8        In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court
9   held that a civil rights complaint must be dismissed if a judgment
10  in  favor  of  a  plaintiff  would  undermine  the  validity  of  a
11  plaintiff's  conviction  or  sentence,  unless  a  plaintiff  can
12  demonstrate  that  the  conviction  or  sentence  has  already  been
13  invalidated.  <u>Id.</u> at 496-87.  The <u>Heck</u> Court explained that

14

15       [I]n  order  to  recover  damages  for  an  allegedly
16       unconstitutional  conviction  or  imprisonment,  or  for
17       other  harm  caused  by  actions  whose  unlawfulness  would
18       render  a  conviction  or  sentence  invalid,  a  § 1983
19       plaintiff must prove that the conviction or sentence has
20       been  reversed  on  direct  appeal,  expunged  by  executive
21       order,  declared  invalid  by  a  state  tribunal  authorized
22       to make such determination, or called into question by a
23       federal  court's  issuance  of  a  writ  of  habeas  corpus.  A
24       claim for a sentence that has not been so invalidated is
25       <u>not</u> cognizable under § 1983.

26

27  <u>Id.</u> at 486-87.  The <u>Heck</u> doctrine applies to <u>Bivens</u> actions.  <u>See</u>
28  <u>United States v. Crowell</u>, 374 F.3d 790, 795 (9th Cir. 2004); <u>Martin</u>

1  v. Sias, 88 F.3d 774, 775 (9th Cir. 1996) (applying Heck to Bivens
2  action).

3

4       Plaintiffs allege that ICE Agents, in coordination with the
5  LAPD and DCPS, entered plaintiffs' home without a warrant to
6  conduct a search of the premises, arrest Plaintiffs Nicole and
7  Petra, and remove J.A. from the home.  (Compl. at 6-7).  To the
8  extent the alleged warrantless search or related arrests of
9  Plaintiffs led to any criminal proceedings against Plaintiffs, it
10  is possible that the Heck doctrine would bar civil rights claims
11  that, if successful, would invalidate Plaintiffs' criminal
12  convictions.  In any amended complaint, Plaintiffs should consider
13  whether the alleged claims are barred by the Heck doctrine.

14

15  **E.    Discovery of "Doe" Defendants**

16

17       Plaintiffs have included "Doe" defendants in their complaint.
18  Plaintiffs are responsible for obtaining the full name of each
19  defendant named in any amended complaint.  Failure to do so will
20  may result in dismissal of claims against the "Doe" defendants.

21

22       Plaintiffs are entitled to conduct discovery in order to
23  obtain this information.  See Wakefield v. Thompson, 177 F.3d 1160,
24  1163 (9th Cir. 1999) ("[W]here the identity of the alleged
25  defendant is not known prior to the filing of a complaint, the
26  plaintiff should be given an opportunity through discovery to
27  identify the unknown defendants, unless it is clear that discovery
28  would not uncover the identities, or that the complaint would be

12

dismissed on other grounds.") (quoting <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir. 1980)).  Accordingly, if Plaintiffs do not know the full names of the Doe defendants, they must <u>promptly</u> pursue discovery by immediately serving written interrogatories on the appropriate named defendants (or depositions upon written questions on non-parties) and request the names or identities of the Doe defendants.  Plaintiffs may then discover and substitute the full names of those defendants who are inadequately identified in the current Complaint.

**IV.**

**CONCLUSION**

For the reasons stated above, the Complaint is dismissed with leave to amend.  If Plaintiffs still wish to pursue this action, they are granted **thirty (30) days** from the date of this Memorandum and Order within which to file a First Amended Complaint.  In any amended complaint, Plaintiffs shall cure the defects described above.  **Plaintiffs shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the original complaint.**  The First Amended Complaint, if any, shall be complete in itself and shall bear both the designation "First Amended Complaint" and the case number assigned to this action.  It shall not refer in any manner to any previously filed complaint in this matter.

In any amended complaint, Plaintiffs should confine their allegations to those operative facts supporting each of their claims.  Plaintiffs are advised that pursuant to Federal Rule of

Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiffs are strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.** In any amended complaint, Plaintiffs should identify the nature of each separate legal claim and make clear what specific factual allegations support each of their separate claims. Plaintiffs are strongly encouraged to keep their statements concise and to omit irrelevant details. It is not necessary for Plaintiffs to cite case law or include legal arguments. Plaintiffs are also advised to omit any claims for which they lack a sufficient factual basis.

**Plaintiffs are explicitly cautioned that failure to timely file a First Amended Complaint, or failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudice for failure to prosecute and obey Court orders pursuant to Federal Rule of Civil Procedure 41(b). Plaintiffs are further advised that if they no longer wish to pursue this action, they may voluntarily dismiss it by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is attached for Plaintiff's convenience.**

DATED:  October 20, 2016

                                              /S/
                                   ――――――――――――――――――――――
                                   SUZANNE H. SEGAL
                                   UNITED STATES MAGISTRATE JUDGE